UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
ADAM SARR,

                Plaintiff,

        -v-                                  **22 Civ. 3610 (VEC)(RWL)**

SINERGIA, INC., and DONALD LASH,

                Defendants.
------------------------------------------------------------------------ X

---

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

---

PECHMAN LAW GROUP PLLC
Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
488 Madison Avenue, 17th Floor
New York, New York 10022
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
Tel.: (212) 583-9500

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................i-ii

**PRELIMINARY STATEMENT** .........................................................................................1

**STATEMENT OF FACTS AND PROCEDURAL HISTORY** ............................................1

    I.    PLAINTIFFS' FLSA CLAIM AND UNDERLYING ALLEGATIONS..........................................1

    II.    PLAINTIFFS' COLLECTIVE ACTION ALLEGATIONS ...........................................................2

    III.    PLAINTIFF'S PAYSTUB PROVIDED IN SUPPORT OF HER MOTION .....................................4

**ARGUMENT** ......................................................................................................................5

    I.    PLAINTIFF HAS FAILED TO SET FORTH AN FLSA CLAIM ..................................................6

    II.    ALTERNATIVELY, THE COURT SHOULD SIGNIFICANTLY LIMIT THE PROPOSED FLSA COLLECTIVE AND AMEND THE PROPOSED NOTICE ............................................10

**CONCLUSION**....................................................................................................................15

## TABLE OF AUTHORITIES

Cases

*Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20–CV–421 (LHD)(MMH), 2021 WL 4502479, at *1 (S.D.N.Y. Sept. 30, 2021) ................................. 13

*Barrera v. Forlini's Restaurant, Inc.*, No. 22 Civ. 1256 (VEC), 2022 WL 3348106, at *1 (S.D.N.Y. Aug. 12, 2022) ....................................................................... 5

*Beaton v. Verizon New York, Inc.*, No. 20 Civ. 672, 2020 WL 5819902, at *1 (E.D.N.Y. Sept. 30, 2020) ................................................................................... 5, 10

*Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474 (S.D.N.Y. 2016) ................................. 6

*Campos v. Lenmar Restaurant Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *1 (S.D.N.Y. Nov. 21, 2019) ........................................................................ 13

*Chen v. Good Chows Inc.*, No. 14 Civ. 5960 (FM), 2016 WL 3144396, at *1 (S.D.N.Y. May 3, 2016) ........................................................................................... 11

*Chu v. Am Yuexianggui of LI LLC*, No. 18 Civ. 5091 (SJF)(AKT), 2020 WL 3618892, at *1 (E.D.N.Y. July 2, 2020) ................................................................... 12

*Dejesus v. HF Management Services, LLC*, 726 F.3d 85 (2d Cir. 2013) ................................. 6, 7

*Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2014 WL 1807105, at *1 (S.D.N.Y. 2014) .................................................................................................................. 5

*Garriga v. Blonder Builders Inc.*, No. 17 Civ. 497 (JMA)(AKT), 2018 WL 4861394, at *1 (E.D.N.Y. Sept. 28, 2018) ............................................................. 11

*Gaspar v. Personal Touch Moving, Inc.*, No. 13–CV–8187 (AJN), 2014 WL 4593944, at *1 (S.D.N.Y. Sept. 15, 2014) ............................................................... 12

*Hilaire v. Underwest Westside Operation Corp.*, No. 19 Civ. 3169 (PAE)(RWL), 2020 WL 774133, at *1 (S.D.N.Y. Feb. 17, 2020) ....................................... 11

*Joshi v. Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785 (ALC)(SN), 2018 WL 1135566, at *1 (S.D.N.Y. Mar. 1, 2018) ................................................................ 6, 8, 11

*Ladino v. Ridgewood Ale House Inc.*, No. 21-CV-2449 (ARR)(SJB), 2022 WL 1122621, at *1 (E.D.N.Y. April 14, 2022) ..................................................................... 6, 7, 9

*Lundy v. Catholic Health System Of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) .................................................................................................................. 6, 8, 10

*Martinenko v. 212 Steakhouse Inc.*, No. 22 Civ. 518 (LJL), 2022 WL 1227140, at *1 (S.D.N.Y. April 26, 2022) ........................................................................... 11

*Montenegro v. Laumont Photographics, Inc.*, No. 20 CV 4443 (DG)(CLP), 2021 WL 9032221, at *1 (E.D.N.Y. Aug. 10, 2021) ............................................................................ 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ...................................................................... 5

*Nakahata v. New York-Presbyterian Healthcare System Inc.*, 723 F.3d 192 (2d Cir. 2013) .................................................................................................................................. 6

*Romero v. La Revise Associates, L.L.C.*, 968 F. Supp. 2d 639 (S.D.N.Y. Sept. 16, 2013) .................................................................................................................................. 12

*Santamaria v. Homemade Taqueria Corp.*, No. 21 Civ. 3562, at *1 (E.D.N.Y. April 22, 2022) ........................................................................................................................ 5

*Taveras v. PSD Freeport Inc.*, No. 19-CV-6243 (MKB) (RER), 2021 WL 1405994, at *1 (E.D.N.Y. Apr. 14, 2021) ................................................................................ 13

*Tueros v. Urban Health Plan, Inc.*, No. 21-CV-4525 (JMF)(RWL), 2022 WL 2752070, at *1 (S.D.N.Y. July 14, 2022) .................................................................................. 13

*Villalta v. 101-11 86 Ave. Corp.*, No. 20 Civ. 0249 (RRM)(TAM), 2022 WL 462408, at *1 (E.D.N.Y. Feb. 15, 2022) .............................................................................. 12, 13

*Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74 (2d Cir. 2003) .................................................................................................................................. 14

Statute

29 U.S.C. § 255 (2019) ................................................................................................................. 11

**PRELIMINARY STATEMENT**

Plaintiff Adam Sarr ("Plaintiff") has failed to state a claim for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and as such, is precluded from pursuing a collective action under the FLSA on behalf of herself or any other of Defendants' employees. In the alternative, if the Court finds that conditional certification is appropriate, the proposed collective should be significantly limited and the proposed notice materials should be amended, as discussed below.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]**

**I.    Plaintiffs' FLSA Claim and Underlying Allegations**

Plaintiff claims that she worked as a Direct Support Professional ("DSP") for Defendants Sinergia, Inc. ("Sinergia") and Donald Lash (collectively, "Defendants") from approximately September 2020 to November 23, 2021. ECF No. 1 ¶ 23; ECF No. 29 ¶ 1. She further claims that she worked at different homes and residences in New York City, mostly in the Bronx and Manhattan. ECF No. 1 ¶ 23; ECF No. 29 ¶ 1. Some of the residences were next door to each other. *See, e.g.*, ECF No. 29 ¶ 1 (3016 Corlear Avenue and 3018 Corlear Avenue, both in the Bronx). According to Plaintiff, Sinergia paid her $16.50 per hour throughout her employment. ECF No. 1 ¶ 25; ECF No. 29 ¶ 4.

Plaintiff claims that she was scheduled to work forty-three hours over five days per workweek, Wednesdays through Fridays from 4:00 p.m. to 9:00 p.m., and Saturdays and Sundays from 7:00 a.m. to 9:00 p.m. ECF No. 1 ¶ 24; ECF No. 29 ¶ 3. According to Plaintiff, she was subject to a one-hour automatic meal break deduction, "which she did not take four (4) times a week because she would be the only person at the job site." ECF

---

[1]    For purposes of his Motion only, some of Plaintiff's allegations in the Complaint (ECF No. 1) and in the Declaration of Adam Sarr (ECF No. 29) are accepted as true without admitting them. As stated in their Answer (ECF No. 19), Defendants expressly deny violating applicable wage-and-hour laws, including the FLSA, with respect to Plaintiff or any of Sinergia, Inc.'s employees.

No. 1 ¶ 27; ECF No. 29 ¶ 9. Plaintiff does not claim that Sinergia shaved an hour from her fifth workday each week, nor does she state that she took the hour-long lunch break on that day. *See* ECF No. 1 ¶¶ 24, 27; ECF No. 29 ¶¶ 3, 9.

Plaintiff claims that "[a]s a direct support professional," she was also required to travel between the different homes and residences during her "workday" and was never compensated for this travel time, which she claims amounted to four hours of unpaid travel time "per day" twice per week, or presumably eight hours per week. ECF No. 1 ¶¶ 23, 28; ECF No. 29 ¶ 1.[2] In sum, Plaintiff claims that Defendants failed to pay her overtime wages, in violation of the FLSA, because of their alleged time shaving practices relating to lunch and travel time.

## II.   Plaintiffs' Collective Action Allegations

In support of her Motion, Plaintiff only submits her own declaration. In it, she names ten DSPs whose hours were also allegedly shaven for lunch breaks and who were not paid for alleged required travel time. ECF No. 29 ¶ 2. Plaintiff does not state the hours or approximate work schedule that any of Sinergia's "other employees" worked, but merely alleges that they worked "the same or similar hours" as Plaintiff. *Id.* ¶ 3. She does not state the amount that any of Sinergia's "other employees" was paid, only that they "were compensated at similar hourly rates" as Plaintiff. *Id.* ¶ 4. Plaintiff does not allege an example of any given workweek within the last three years in which she or any of Sinergia's other employees did not receive pay for alleged time worked.

As noted, Plaintiff states that she did not take one-hour lunch breaks four out of five days per workweek because she was "the only person at the job site." ECF No. 1 ¶

---

[2]   It is unclear whether Plaintiff means that her alleged uncompensated travel per week amounted to four hours, occurring twice per week, or to eight hours, with four hours of unpaid travel time per day occurring two days per week.

2

27; ECF No. 29 ¶ 9. Nonetheless, Plaintiff declares under oath that based on her "observations" she knows that "*all employees* of Defendants," not just DSPs, "were subject to the same wage and hour policies" she claims. ECF No. 29 ¶ 2 (emphasis added). Nowhere in her Motion papers, however, does Plaintiff identify who the alleged non-DSP employees are, what their positions were, or how Plaintiff purports to know anything about their employment conditions. *See generally* ECF Nos. 26–29. Rather, she declares that she "frequently discussed Defendants' illegal practice[s]" of time shaving for lunches and not compensating employees for travel time "*every day while working on the job site*, in the office during training, and also while we were relieving each other of our shifts" with two or three DSPs. *See* ECF No. 29 ¶¶ 6, 8, 10 (emphasis added).

Plaintiff claims that "other employees employed by Defendants (including, but not limited to, [the DSPs] listed in ¶ 2 herein) were similarly not compensated for travel time when working multiple locations." *Id.* ¶ 7. According to Plaintiff, she discussed Sinergia's alleged illegal practice of not paying for travel time "every day" with "other co-workers," especially DSPs Ravan (whose last name Plaintiff does not know) and Tanisha de Jesus. *Id.* ¶ 8. Similarly, Plaintiff claims that Sinergia's "other employees," not just DSPs, "were improperly time shaved for automatic meal break deductions for breaks they could not take." *Id.* ¶ 9. Plaintiff claims to know this based on conversations she had "every day" with co-workers, such as DSPs "Ravan [LNU], Tanisha de Jesus, and Tiffany Thomas," who would allegedly complain to Plaintiff about it being "unfair that we were automatically deducted for meal breaks that we could not take because the homes were busy, and because we would be the only ones working the shift." *Id.* ¶ 10.

Plaintiff claims that, throughout her employment, she was "not always paid the overtime premium of one-and-one-half times my regular rate of pay for hours worked in excess of forty (40) per week *due to time shaving*." *Id.* ¶ 5 (emphasis added). Despite this,

3

Plaintiff also declares that she and three DSPs would have discussions "every day" "that it was unfair that *we were always being paid at the same hourly rate, even if we worked overtime*." *Id.* ¶ 6. There is no claim for overtime wages paid at the regular hourly wage rate anywhere in the Complaint or the Motion papers. *See generally* ECF Nos. 1, 26–29.

### III.   Plaintiff's Paystub Provided in Support of Her Motion

Plaintiff provides a sole paystub, labeled "Exhibit B," in support of her Motion. ECF No. 27–2. She refers to it only one time in her Motion papers to state that she was allegedly not compensated for required travel time, with no explanation of how the paystub supports her allegation. ECF No. 27 at 3. The paystub reflects that for the period of October 22 to November 4, 2021, which encompasses the two workweeks from October 22 to 28 and October 29 to November 4, Plaintiff was paid at the rate of $16.25 for 46.90 hours worked. *See id.* Plaintiff does not explain anything about the paystub, including how the 46.90 hours she cumulatively worked in the two-week period of October 22 to November 4, 2021, were distributed between each of those two workweeks. *See generally* ECF Nos. 26–29.

The paystub reflects that through the week ending on November 4, 2021, the forty-fourth workweek of 2021, Plaintiff was paid a total of 1293.12 hours. *Id.* Of these hours, Plaintiff did not work 7 hours of "Floating Holiday," 7 hours of "Holiday," 5 hours of "Jury Duty," 60 hours of "Sick" time, and 50 hours of "Vacation," totaling at least 129 non-compensable hours. *See id.* Subtracting these hours, Plaintiff was compensated for 1164.12 hours in 2021 through November 4, 2021. *See id.* Based on this, on average, Plaintiff worked 26.46 hours per workweek in 2021 (*i.e.*, 1164.12 hours divided by 44 workweeks). Assuming *arguendo*, without admitting, that Sinergia failed to pay Plaintiff for twelve hours worked per workweek, as Plaintiff appears to allege (ECF No. 29 ¶¶ 7, 9), Plaintiff worked an average of 38.46 hours per workweek in 2021. *See* ECF No. 27–2.

4

**ARGUMENT**

Plaintiff cannot maintain a collective action because she has failed to allege a plausible FLSA claim. In the alternative, if the Court finds that Plaintiff has alleged an FLSA claim, the Court should significantly limit the scope of the proposed FLSA collective and amend the proposed notice and consent to sue form, as explained below.

The FLSA allows employees to maintain actions for and on "behalf of . . . themselves and all other employees similarly situated." 29 U.S.C. § 216(b) (2019). Courts in the Second Circuit follow a two-step process in determining whether to certify a collective action. *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). In the first step, at issue here, a plaintiff must prove that the employer's other employees are "similarly situated" to her. *See, e.g., Barrera v. Forlini's Rest., Inc.*, No. 22 Civ. 1256 (VEC), 2022 WL 3348106, at *1 (S.D.N.Y. Aug. 12, 2022). A plaintiff does this by making a "modest factual showing" that she "and potential opt-in plaintiffs,' together, were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Myers*, 624 F.3d at 555). Although the burden is "modest," "it is not non-existent." *Id.* (quoting *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2014 WL 1807105, at *1 (S.D.N.Y. 2014)). At this stage, there must be a claim supported by a modest amount of evidence showing that an alleged violation of the FLSA applies to all potential opt-ins. *Beaton v. Verizon N.Y., Inc.*, No. 20 Civ. 672, 2020 WL 5819902, at *2 (E.D.N.Y. Sept. 30, 2020).

Courts have denied conditional certification where a plaintiff makes only conclusory allegations and fails to present any evidence of a common policy that violates the FLSA. This inquiry "cannot be satisfied simply by 'unsupported assertions[.]'" *Santamaria v. Homemade Taqueria Corp.*, No. 21 Civ. 3562, at *2 (E.D.N.Y. April 22, 2022) (quoting *Myers*, 624 F.3d at 555). Where there is a single affidavit from the named plaintiff, as here, it is critically important that the affidavit provide details about the

5

employee's "observations and conversations" about and with other employees, "such as where and when they occurred and the names of the employees involved." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481–82 (S.D.N.Y. 2016). The affidavit must "describe where and when these discussions took place, *what the other employees were paid, what specific hours they worked.*" *Joshi v. Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785 (ALC)(SN), 2018 WL 1135566, at *4 (S.D.N.Y. Mar. 1, 2018) (emphasis added). This is because the plaintiff must "demonstrate that the other employees were subject to a common policy *that violated the law*." *Ladino v. Ridgewood Ale House Inc.*, No. 21-CV-2449 (ARR)(SJB), 2022 WL 1122621, at *6 (E.D.N.Y. April 14, 2022) (emphasis in original).

Plaintiff's submission fails to satisfy the modest factual showing standard.

### I. Plaintiff Has Failed to Set Forth an FLSA Claim

Plaintiff failed to provide sufficient evidence showing a violation of the FLSA both on her own behalf and on behalf of any potential opt-in plaintiff. "To state an overtime claim under the FLSA, a plaintiff must 'sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Ladino*, 2022 WL 1122621, at *6 (quoting *Lundy v. Cath. Health Sys. Of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). In *Lundy*, the Second Circuit set forth "the degree of specificity needed to state an overtime claim under [the] FLSA." *Lundy*, 711 F.3d at 114. "[A] plaintiff must allege that in at least one workweek he or she worked at least 40 hours, and also worked some uncompensated time in that week in excess of the 40 hours." *Ladino*, 2022 WL 1122621, at *6. An overtime claim fails when it is supported by general allegations that the plaintiff was not compensated for overtime hours worked. *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). It is "a 'given' workweek" that the plaintiff must allege, not simply "some or all workweeks." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013). Simply stating that an employee works fifty

6

hours per week or more than forty hours per week without more information, notably "a specific week in which [he] worked overtime" and did not receive required overtime pay, can result in dismissal. *See Ladino*, 2022 WL 1122621, at *6.

Plaintiff fails to specify any week in which she worked more than forty hours and was not paid for overtime hours worked. *See generally* ECF Nos. 1, 29. Rather, Plaintiff only alleges that she was "scheduled" to work given shifts totaling forty-three hours per workweek and was not paid for approximately twelve hours per workweek. ECF No. 29 ¶¶ 3, 7, 9. But Plaintiff does not identify any "given" week in her employment period in which she worked more than forty hours and was not compensated for overtime hours worked. *See generally id.* This is precisely the sort of recitation that merely tracks "the statutory language of the FLSA . . . but alleg[es] no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Dejesus*, 726 F.3d at 89.

The paystub Plaintiff submits supports this conclusion. It shows that the hours Plaintiff alleges working are implausible. *Compare* ECF No. 27–2 (showing average of 26.46 hours worked per week) *with* ECF No. 29 ¶ 3 (claiming forty-three hours per week throughout her employment). Based on the paystub, and assuming *arguendo* without admitting Plaintiff's time shaving claims, Plaintiff worked an average of 38.46 hours per workweek. *See* ECF No. 27–2; ECF No. 29 ¶¶ 7, 9. Assuming she was regularly paid 26.46 at $16.50 per hour (*i.e.*, $436.59) and regularly worked 38.46 hours per workweek, as she claims (ECF No. 29 ¶¶ 3–4, 7, 9), her effective hourly wage rate would be $11.35 (*i.e.*, $436.59 divided by 38.46). This is greater than the federal minimum hourly wage rate of $7.25. *See* 29 U.S.C. § 206(a)(1)(C).[3] Plaintiff's own evidence shows that her claim

---

[3] Her effective hourly wage rate would be $11.18 assuming $16.25 per hour as a regular rate, as reflected in the paystub (ECF No. 27–7), equal to $429.98 (*i.e.*, $16.25 x 26.46 hours) divided by 38.46 hours.

7

for alleged unpaid wages would not be actionable under the FLSA. *See, e.g.*, *Lundy*, 711 F.3d at 116–17 (explaining gap time claims are not actionable under the FLSA).

In any event, Plaintiff cannot pursue claims on behalf of a purported collective even if the Court found that she stated individual claims for unpaid overtime wages under the FLSA. Plaintiff's declaration is devoid of information concerning other employees' employment conditions, including when they worked at Sinergia, their hourly wage rates, and their work hours. *See generally* ECF No. 29. It states in a conclusory fashion that other DSPs would "complain" to Plaintiff about not being paid for lunches or travel time, *see* ECF No. 29 ¶¶ 8, 10, but it fails to mention a single specific instance of any DSP working more than 40 hours without proper compensation or even what DSPs told Plaintiff about their schedules or compensation. *See* ECF No. 29 ¶¶ 3–4 (stating "employees" worked the "same or similar hours" and were paid at "similar hourly rates"). Plaintiff's conclusory statement that she and her co-workers complained "that it was unfair that we were *always* being paid at *the same hourly rate, even if we worked overtime*" (*id.* ¶ 6 (emphasis added)) is contradicted by her own claims of overtime hours being shaved (*id.* ¶¶ 7–10) and her paystub showing overtime pay (ECF No. 27–2).

Plaintiff lacks specifics about other employees' hours worked. *See, e.g.*, *Joshi*, 2018 WL 1135566, at *4 (denying motion for conditional certification where employee's "declaration does not describe *specific instances* when he observed other employees working more than 40 hours without proper compensation, nor does it describe what the other employees told [plaintiff] about their work schedules and compensation"). Plaintiff must "describe where and when" she had discussions with her co-workers, as opposed to providing a blanket statement that they happened in the same three vague locations "every day" even though Plaintiff purportedly could not take lunch breaks because she worked alone (ECF No. 29 ¶¶ 4, 6–9). *See Joshi*, 2018 WL 1135566, at *4 (denying

8

conditional certification motion where employee's affidavit did not explain where "these discussions took place, *what the other employees were paid, what specific hours they worked*" (emphasis added)); *see also Montenegro v. Laumont Photographics, Inc.*, No. 20 CV 4443 (DG)(CLP), 2021 WL 9032221, at *6 (E.D.N.Y. Aug. 10, 2021) (denying motion where plaintiff "claims to have observed coworkers working more than 40 hours per week [within the last three years and alleged speaking with them about not being paid overtime] *but does not cite a specific instance when this occurred*" (emphasis added)).

At most, Plaintiff states that other DSPs worked the "same or similar hours" and were paid "at similar hourly rates" as Plaintiff, without describing their job duties, lengths of employment, when they worked more than forty hours, and what their wages were on those weeks. ECF No. 29 ¶¶ 3–4. This does not establish a common policy in violation of the FLSA. In *Ladino*, the Court denied a conditional certification motion reasoning as follows: "[I]f there were an identifiable week in which Pedro or Jesus worked more than 40 hours, and there were some indications of the amount they were paid that week, the Court could potentially find an overtime violation. But instead of filling this gap, Ladino's declaration amplifies this lacuna; he says he does 'not know how much each employee was paid.'" 2022 WL 1122621, at *7 (quoting declaration). Plaintiff does not know how much other DSPs were paid or what hours they worked. *See* ECF No. 29 ¶¶ 3–4. Like the plaintiff in *Ladino*, she fails to provide even minimal evidence of DSPs working more than forty hours and their wages paid on any given week. *See* 2022 WL 1122621, at *7; ECF No. 29 ¶¶ 2–4, 8, 10. This evidence is particularly important here because, based on Plaintiff's declaration and paystub, employees who worked the "same or similar" hours and received the "same" pay as Plaintiff would have also typically worked fewer than forty hours per workweek. *See* ECF No. 27–2. As such, they would

9

be subject to the same gap time issue as Plaintiff, which is fatal to her FLSA claim and would need to be overcome with more evidence. *See Lundy*, 711 F.3d at 116–17.

## II. Alternatively, the Court Should Significantly Limit the Proposed FLSA Collective and Amend the Proposed Notice

If the Court disagrees with Defendants on point I above and finds that Plaintiff is entitled to proceed with a conditionally certified collective action, Plaintiff's proposed collective should be significantly limited.

First, Plaintiff fails to provide any evidence justifying an expansion of a proposed collective beyond the DSP position. *See generally* ECF Nos. 26–29. Plaintiff identified three DSPs by full name and seven DSPs by first name only, even though she supposedly talked with all of them "every day" about alleged wage payment violations. ECF No. 29 ¶¶ 2, 6, 8. Plaintiff has not identified any other employee or position at Sinergia. *See generally id.* Plaintiff has not even described the work duties of any Sinergia employee, including the work duties of DSPs. *See generally id.* Despite her sparse allegations, Plaintiff seeks to conditionally certify a collective consisting of all of Defendants' non-exempt employees, including but not limited to "support professionals, home attendants, [and] home care agents." ECF No. 27 at 7. These positions were never mentioned in Plaintiff's Complaint or declaration. *See generally* ECF Nos. 1, 29. Rather, Plaintiff's declaration states in conclusory fashion that "other employees employed by Defendants (including, but not limited to, individuals listed in ¶ 2 herein)" were also subjected to time shaving practices. ECF No. 29 ¶¶ 7, 9. The Court cannot infer that any position beyond DSP was subject to the same policies and practices that Plaintiff alleges. *See, e.g.*, *Beaton*, 2020 WL 5819902, at *3 ("[P]laintiff has not made the '*job-specific* factual showing' that the law requires, and I cannot infer that defendant applied one policy to technicians simply because defendant applied it to escorts."); *see also Garriga v. Blonder Builders Inc.*,

10

No. 17 Civ. 497 (JMA)(AKT), 2018 WL 4861394, at *5 (E.D.N.Y. Sept. 28, 2018) (denying expansion of collective beyond the plaintiff's own position based on lack of evidence (cited in ECF No. 27 at 3)).

Second, Plaintiff seeks to send FLSA collective action notices to any employee who worked at Sinergia in the six-year period before the filing of the Complaint. ECF No. 27–1 at 1; ECF No. 27 at 9 ("Through this motion, Plaintiff seeks to represent a collective class of employees under the FLSA comprised of all non-exempt workers employed by Defendant SINERGIA, INC. in the last six (6) years."). Even if the Court granted Plaintiff's Motion, this would be improper. The FLSA's statute of limitations is two years, going up to three years for alleged willful violations. 29 U.S.C. § 255(a) (2019). Plaintiff cannot represent any "collective of employees who worked beyond the three-year willfulness statute of limitations under the FLSA, as [s]he suggests in [her] proposed notice" and Motion papers. *See Joshi*, 2018 WL 1135566, at *3. "[C]onsent to join is only effective as to the FLSA claims and not as to the New York Labor Law claims or any other claims. The Court has determined only that there are potentially similarly situated plaintiffs with respect to the FLSA overtime claims and only authorized notice as to those claims." *Martinenko v. 212 Steakhouse Inc.*, No. 22 Civ. 518 (LJL), 2022 WL 1227140, at *9 (S.D.N.Y. April 26, 2022); *see also Chen v. Good Chows Inc.*, No. 14 Civ. 5960 (FM), 2016 WL 3144396, at *4 (S.D.N.Y. May 3, 2016) ("[E]ven if the Court had certified this case as a collective action, thereby allowing putative class members to opt-in to the collective class, the procedure obviously would only permit them to pursue FLSA claims.").

Limiting the opt-in period to three years is appropriate because there is no Rule 23 Class Action certified at this time, and Plaintiff seeks only certification of a collective opt-in action under the FLSA. *See, e.g., Hilaire v. Underwest Westside Op. Corp.*, No. 19 Civ. 3169 (PAE)(RWL), 2020 WL 774133, at *6–7 (S.D.N.Y. Feb. 17, 2020); *Gaspar v. Personal*

11

*Touch Moving, Inc.*, No. 13–CV–8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) ("An FLSA notice should inform opt-in plaintiffs of their right to bring FLSA claims, not advance counsel's tangential interest in certifying a class of NYLL plaintiffs who (in some cases) cannot bring FLSA claims."); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 648–49 (S.D.N.Y. Sept. 16, 2013) ("Three years is the maximum time period to join an FLSA collective action and there is no New York state class action certified as of yet. If and when a class is certified under New York law, class members will receive notice at that time through the class action notification process."). It would be quite confusing for Sinergia's former employees who cannot opt-in to an FLSA collective action to receive a notice that is limited to claims under the FLSA. *See, e.g.*, *Gaspar*, 2014 WL 4593944, at *7. In this regard, the consent to sue form (ECF No. 27–1) must be limited to FLSA claims only. Opt-in plaintiffs opt-in to FLSA claims only, not to all claims in the action.

Third, the opt-in period should be sixty, not ninety, days. *See, e.g.*, *Villalta v. 101-11 86 Ave. Corp.*, No. 20 Civ. 0249 (RRM)(TAM), 2022 WL 462408, at *9 (E.D.N.Y. Feb. 15, 2022) ("In general, courts only allow a ninety-day opt-in period 'where the period is agreed upon between the parties or special circumstances require an extended opt-in period.' In contrast, '[c]ourts often grant 60-day opt-in periods . . . where the record suggests that the proposed collective is modest in number" or of moderate size (quoting *Chu v. Am Yuexianggui of LI LLC*, No. 18 Civ. 5091 (SJF)(AKT), 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020)). Plaintiff has not explained what special circumstance in this Action entitles her to a ninety-day period. There is none.

Fourth, the Court should not order production of employees' social security numbers and rates compensation (*see* ECF No. 26–1 § 6). "In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."

12

*Taveras v. PSD Freeport Inc.*, No. 19-CV-6243 (MKB) (RER), 2021 WL 1405994, at *7 (E.D.N.Y. Apr. 14, 2021). Plaintiff does not explain why "'out-of-bounds' information," which "typically includes social-security numbers and rates of compensation," is necessary for notice dissemination. *See Tueros v. Urban Health Plan, Inc.*, No. 21-CV-4525 (JMF)(RWL), 2022 WL 2752070, at *16 (S.D.N.Y. July 14, 2022); *see also, e.g.*, *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20–CV–421 (LHD)(MMH), 2021 WL 4502479, at *11 (S.D.N.Y. Sept. 30, 2021) (denying production of social security numbers where other means of notice dissemination, including text and email, were available); *Campos v. Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *6 (S.D.N.Y. Nov. 21, 2019) (denying production of social security numbers because "the greater weight of authority goes against authorizing the collection of such sensitive information"). In this respect, pre-certification discovery should be limited to three years, not six years as Plaintiff requests (*see* ECF No. 27 at 13), for the same reasons discussed above concerning the three-year statute of limitations. *See supra*; *see also, e.g.*, *Tueros*, 2022 WL 2752070, at *16 (limiting pre-certification discovery to three years).

Fifth, the Court should grant Defendants fourteen days, not ten days (ECF No. 26–1 § 6), to produce the contact information of potential opt-in plaintiffs. *See, e.g.*, *Campos*, 2019 WL 6210814, at *6 ("[T]he more common amount of time given is 14 days.").

Sixth, any notice to collective action members must state Defendants' position, not simply a general denial by Defendants. Defendants request permission to state in the notice that they deny Plaintiff's allegations, do not require DSPs to work off the clock, do not shave their hours worked, and do not even require many DSPs to work overtime hours. Defendants' counsel's information should also be included in the notice. *See, e.g.*, *Villalta*, 2022 WL 462408, at *10 (explaining that it is appropriate to include defense counsel's contact information in a notice).

13

Seventh, Plaintiff's proposal regarding the posting of notices is unnecessary. As Plaintiff alleges, she worked in various private residences. *See* ECF No. 29 ¶ 1 ("I was stationed at various homes and residences . . . throughout New York City."). Defendants cannot be required to post notices in locations that do not even belong to them. Moreover, Plaintiff already requests dissemination of notices by email, text, and first-class mail and claims that she and other DSPs would travel each workday. *See id.* ¶ 7 ("As a direct support professional, I would travel to multiple locations during my workday."). Under these circumstances, the posting of notices is neither required nor practical. Dissemination by mail, text, or email would be more efficient and more likely to reach potential opt-ins.

Finally, Plaintiff does not claim extraordinary circumstances warranting equitable tolling. *See* ECF No. 27 at 13–14. Equitable tolling is appropriate only if a plaintiff "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003). There is no reason to equitably toll the statute of limitations in this run-of-the-mill FLSA action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action under 29 U.S.C. § 216(b) or, in the alternative, limit the collective as set forth above, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 29, 2022

                    PECHMAN LAW GROUP PLLC

                    By: /s/ *Gianfranco J. Cuadra*
                        Gianfranco J. Cuadra
                        Louis Pechman, Esq.
                        Madison Avenue, 17th Floor
                        New York, NY  10022
                        cuadra@pechmanlaw.com
                        pechman@pechmanlaw.com
                        Tel.: (212) 583-9500
                        *Attorneys for Defendants*