# PECHMAN LAW GROUP PLLC
A T T O R N E Y S  A T  L A W

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

December 19, 2022

**VIA ECF**

Honorable Valerie Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

> Re:  *Sarr v. Sinergia, Inc. et al.*, No. 22 Civ. 3610 (VEC)(RWL)
>      Solicitation in LinkedIn Messages and Contact Preclusion

Dear Judge Caproni:

Per the Court's Order of December 14, 2022 (ECF No. 49), Defendants submit this letter-motion to provide additional information and explain why Plaintiff's counsel's contact with former and currect employees of Sinergia, Inc. ("Sinergia") via LinkedIn constitutes an "interactive computer-accessed communication" within the meaning of Sections 7.3 and 1.0(c) of the New York Rules of Professional Conduct.

**I.   Additional Background**

Plaintiff now submits a declaration stating that although she was "notified by my attorney C.K. Lee on the morning of November 23, 2022, of Defendants' offer of $43,100 to settle my individual lawsuit, I still intend to proceed on a class action." ECF No. 50–1 ¶ 5. Yet, on the morning of November 23, 2022, defense counsel spoke about the offer of judgment with Francis Lee and Rony Guldmann, two of Plaintiff's attorneys, who said that C.K. Lee still needed to discuss the offer with Plaintiff. *See* ECF No. 46 at 2; *see also* Ex. 1 at 3–4. Francis Lee stated at 11:59 a.m. on November 23, 2022, that the Parties must continue to work on the FLSA collective action notices "while we are considering your offer," Ex. 1 at 3, and C.K. Lee confirmed at 2:47 p.m. the same day that a response from Plaintiff was "unlikely" by Monday, November 28, because "I am out until middle of week. I will need to speak to client directly." *Id.* at 1. In response, Mr. Pechman suggested that Mr. Lee call Ms. Sarr to provide the good news. There was no response to this suggestion.

On November 22, 2022, in the same email attaching the offer of judgment, Defendants stated that if "Ms. Sarr does not accept this offer, please advise when she is available for her deposition in the weeks of November 28 and December 5." On November 28, 2022, following withdrawal of the offer of judgment as a result of Plaintiff's counsel's messages to Sinergia's employees, ECF Nos. 46–1, 46–2, Ex. 1 at 1, Defendants

Hon. Valerie Caproni
December 19, 2022
Page 2 of 6

served a notice to depose Ms. Sarr on December 5, 2022. *See* Ex. 2 at 2. Since then, the deposition has been postponed twice without a new date. Defendants are available for their depositions soon after Plaintiff's deposition. *See* Ex. 2 at 10. C.K. Lee first confirmed Plaintiff's deposition for December 16, 2022, at noon, *id.* at 6, but cancelled it a few days later because he had a "scheduling conflict." *Id.* at 4. The deposition was rescheduled to December 19, 2022. *Id.* Francis Lee confirmed the date and requested that the deposition start at noon. *Id.* at 3. Following receipt of a Zoom link, Francis Lee cancelled the deposition stating he was "mistaken on Plaintiff's availability." He "propose[d] holding off on depositions until January. This will give the Parties enough time to discuss and produce class list and class documents." *Id.* at 2. As the Court is aware, the list reflecting the contact information of all potential collective action members (the "Collective Action List") is due to Plaintiff's counsel by December 23, 2022. ECF No. 45. Because Plaintiff's counsel was available on December 21, 2022, Defendants requested to take Ms. Sarr's deposition then. Ex. 3 at 1–2. There has been no response. *See id.*

On December 15, 2022, Sinergia learned that Plaintiff's attorney has sent the same message (*i.e.*, ECF Nos. 46–1) to more of the company's employees via LinkedIn, including one employee on November 23 at 5:27 p.m. and another on December 9, 2022.

**II.     LinkedIn Messages and Rule 7.3**

LinkedIn messages are "interactive computer-accessed communications" within the meaning of Rule 7.3 of the New York Rules of Professional Conduct. Comment 9 to Rule 7.3 states that "*instant messaging* ('IM'), chat rooms, and other *similar types of conversational* computer-accessed communciations—whether sent or received via a desktop computer, a portable computer, a cell phone, or any similar electronic wireless device, and *whether sent directly or via social media*—are considered to be real-time or interactive communication." N.Y.P.R.C. 7.3 at cmt. 9 (2022) (emphasis added).

LinkedIn is "the worlds largest professional network on the internet," presenting a "platform for anyone who is looking to advance their career" and connect professionals. https://www.linkedin.com/help/linkedin/answer/a548441/what-is-linkedin-and-how-can-i-use-it-?lang=en (last visited Dec. 16, 2022).[1] In other words, it is a social media platform or network. Messages sent on it are instant and interactive. *See* https://www.linkedin.com/help/linkedin/answer/a550206 (explaining under "What are conversation windows?" that "LinkedIn messaging conversation windows ***are pop-up chat windows located on the bottom right of every page on the LinkedIn.com website***" (emphasis added)); ECF No. 46–1 (reflecting message forwarded to recipient's email that can be replied to by email or on the LinkedIn website as an instant message). They are primarily chat-like instant messages that, depending on a user's notification settings, can be immediately forwarded to a recipient's linked email address. *See* https://www.linkedin.com/help/recruiter/answer/a564261 (last visited Dec. 16, 2022) (explaining messages are sent "to the recipient's messaging list and possibly to their email

---

[1] Defendants recognize that the Court is most likely aware of how LinkedIn messages work. However, because Plaintiff mischaracterizes LinkedIn messages as "the functional equivalent of an email," ECF No. 50 at 2, Defendants provide a brief description of LinkedIn messaging functions to explain how they are "interactive computer-accessed communications" within the meaning of N.Y.P.R.C. § 7.3.

address"). Depending on notification settings and whether a user utilizes the LinkedIn mobile application, a LinkedIn message may appear on the bottom right of his or her computer screen as a chat window or, on mobile, as a notification that is similar to an SMS text message. *See* https://www.linkedin.com/help/linkedin/answer/a1341836 ("Email and mobile notifications are messages that mobile apps send to your mobile device. You can control which push notifications and what sounds you receive by accessing your notification settings.").

Plaintiff's counsel presumably uses a LinkedIn Premium account, which allows him "to directly message another LinkedIn member that [he] is not connected to." *See* https://www.linkedin.com/help/linkedin/answer/a543895 (last visited December 16, 2022). This type of message is a direct one-on-one communication with another user. *See, e.g.*, ECF Nos. 46–1, 46–2. As noted, it appears on the bottom right of the recipient's screen (on desktop) or as a push notification (on mobile) and is forwarded along as an email if unanswered and if the user's notification settings allow so.

Counsel's messages here are "solicitation" within the meaning of Rule 7.3(b). They are "initiated by or on behalf of a lawyer or law firm," in this case C.K. Lee and the Lee Litigation Group, and are "directed to, targeted at, a specific recipient or group of recipients," in this case former and current employees of Sinergia. For several reasons explained below, the primary purpose of these messages is to have more individuals join this Action and thereby significantly increase counsel's pecuniary gain. Plaintiff's counsel is not engaging in a legitimate "investigation" here.

First, although Plaintiff states that she "intend[s] to proceed as a class action" despite knowing the offer amount, ECF No. 50–1 ¶ 5, she never states that she rejected, would have rejected, received a copy of, or even considered all terms of the offer of judgment after being notified of its amount on the morning of November 23, 2022. *See id.* If on November 23, 2022, Ms. Sarr was considering the offer (*see* Ex. 1 at 3), which her attorneys admitted was of significant benefit to her (ECF No. 46 at 2), then there was no reason for C.K. Lee to "investigate" her claims by contacting Sinergia's employees less than four hours later on the same day. *See* ECF No. 46–1. By then, Ms. Sarr was being offered many times her highest possible recovery in this case even if she won on a class action basis and received a service award. Even accepting the facts in Plaintiff's carefully worded declaration as true, the only reason to contact Sinergia's clients at this point was to add another potential plaintiff to continue the case in Ms. Sarr's absence.

Second, even after submission of her two declarations (ECF Nos. 48–1, 50–1), it is questionable whether Ms. Sarr was ever notified of the offer of judgment's terms. Plaintiff's counsel confirmed by email at 2:47 p.m. on November 23, 2022, that he still had to speak to his client directly about the offer of judgment. Ex. 1 at 1. Moreover, the Court ordered Plaintiff's counsel twice to submit a declaration from Ms. Sarr "confiring that *the terms* of the Offer of Judgment were timely communicated to her." ECF Nos. 47 at 5, 49 at 4 (emphasis added). A key term in the offer of judgment was that Plaintiff's counsel's fees and costs would be paid for separately and apart from the $43,100[2] being offered to

---

[2] Defendants recognize that Courts typically avoid knowing settlement offer amounts. The amount is mentioned here only because Plaintiff has mentioned it twice. ECF Nos. 48–1 ¶ 5, 50–1 ¶ 5.

Ms. Sarr alone. *See* ECF No. 46 at 1. The amount payable as fees and costs would have been agreed to between the Parties separately or, if they could not reach an agreement, determined by the Court. *Id.* This term is one of the reasons the offer was so beneficial to Ms. Sarr, yet it is absent from both of her declarations. ECF Nos. 48–1 ¶ 5, 50–1 ¶ 5.[3]

Along these lines, Ms. Sarr seems to be conveniently unavailable for a remote Zoom deposition since the end of November 2022, following the withdrawal of the offer of judgment. *See* Exs. 1–3. Defendants first asked for Ms. Sarr's availability for a deposition on November 22, 2022, in the same email enclosing the offer of judgment. If Ms. Sarr rejected the offer of judgment outright on November 23, 2022, because she truly wishes to proceed on a class action basis, then her deposition should have taken place by now. Instead, her deposition has been rescheduled twice, most recently after Plaintiff's counsel confirmed the December 19 date and requested a noon start time. *See* Ex. 3 at 2–3. There is no new deposition date. *Id.* at 1–2. Per Plaintiff's counsel's last email, it seems counsel wishes to push off depositions (and the information to be discussed in them, including all terms of the offer of judgment and why it was withdrawn) until after receipt of the "class list" and other "class" information. *Id.* at 2.

Third, Plaintiff's counsel has asked to take the Rule 30(b)(6) deposition of Sinergia and a deposition of Defendant Donald Lash. *Id.* at 7. As part of its notice of deposition to Sinergia, counsel requests to question the Rule 30(b)(6) deponent about a series of policies and practices concerning wage payments. Plaintiff also wants to take separate depositions of an employee from the company's Human Resources Department, another employee from the company's Payroll Department, and all individuals who served as her direct supervisors, including two individuals Plaintiff identified. *Id.* at 6. One would imagine this suffices for "investigation" purposes, obviating the need for counsel to contact every person with the name "Sinergia" on his or her LinkedIn account.

Fourth, consistent with Rule 11 of the Federal Rules of Civil Procedure, counsel should have already "investigated" Plaintiff's claims before filing a Complaint (ECF No. 1), a declaration (ECF No. 29), and a First Amended Complaint (ECF No. 38) all alleging that Defendants violated the FLSA and NYLL due to time shaving and by failing to comply with the Wage Theft Prevention Act. The Complaint of May 4, 2022, alleges that all employees of Sinergia have been subjected to the same wage payment violations under both the FLSA and NYLL pursuant to "corporate-wide policies and practices." ECF No. 1 ¶¶ 11–18, 22. In it, Plaintiff claims that she and all potential class and collective action members worked similar schedules and were paid at similar wage rates, and that they were all subject to the same "time shaving" policies. *Id.* ¶¶ 24–27. On July 27, 2022, in support of her motion for conditional certification of an FLSA collective action, Plaintiff stated under oath that she was "required to travel between locations during my workday and was never compensated for such travel time" and that ten other DSPs were "subject

---

[3] Defendants also note that, to date, every document in this Action signed by Ms. Sarr, including her two signed discovery responses, has had a DocuSign envelope ID at the top confirming her electronic signature. *See, e.g.*, ECF No. 29 (Sarr declaration in support of motion for conditional certification of an FLSA collective action); ECF No. 48–1 (first declaration submitted in connection with this preclusion issue). Her latest declaration lacks the DocuSign envelope ID. *See* ECF No. 50–1.

to the same wage and hour policies." ECF No. 29 ¶¶ 1–2. Plaintiff reiterates that she and "other employees employed by Defendants," not just the ten DSPs identified, "worked the same or similar hours," "were compensated at similar hourly rates," and were not paid overtime due to the same time shaving practices and policies. *Id.* ¶¶ 3–10. Plaintiff states that neither she nor any "other employee . . . ever received a written wage and hour notice" or "proper wage statements." *Id.* ¶¶ 11–12.

On September 15, 2022, Defendants produced 258 pages of records, including the wage and hour notice that Plaintiff signed at the time of hiring, records showing Plaintiff was paid for lunch breaks when she told management she did not take them, and payroll and time records showing where and when Plaintiff worked each workday. Except for removing her claim for failure to receive a wage notice under NYLL § 195(1) (*compare* ECF No. 1 ¶¶ 29, 52 *with* ECF No. 38), the Amended Complaint of November 4, 2022, mirrors Plaintiff's claims as alleged in her original Complaint. *See* ECF No. 38 ¶¶ 15–26. Plaintiff still alleges that all putative Collective and Class Action members "worked a similar number of hours each week," "were all compensated at similar rates throughout their employment," all "suffered similarly from Defendants' illegal policy of time shaving" due to untaken meal breaks and travel, and none "receive[d] proper wage statements." *Id.* ¶¶ 31–36. If Plaintiff can assert her claims three times, once under oath and once in an amended pleading following receipt of her payroll records, then there can be no legitimate need for counsel to "investigate" her claims by contacting Sinergia's employees outside traditional discovery methods.

Finally, counsel's solicitation campaign undermines the purpose of the FLSA collective action notice process and shows there was no legitimate "investigation" here. Counsel sent the messages *after* the Court had already conditionally certified the FLSA collective and the Parties had begun working on a joint proposed notice. In her response, ECF No. 48, Plaintiff ignores *Shibetti v. Z Rest. Diner & Lounge Inc.*, in which District Judge Cogan explained that the filing of a lawsuit as a class or collective action does not give an attorney license to ignore Rule 7.3 of the Rules of Professional Conduct. No. 18 Civ. 856 (BMC), 2021 WL 1748415, at *6 (E.D.N.Y. May 3, 2021). This is especially important once "the court grants conditional approval to proceed with a collective action," at which point the Court alone has broad discretion and final say in setting the scope of communications with putative collective action members. *Id.* at *7. The Court has a significant interest in avoiding confusion of potential collective members with one-sided communications that deviate from an approved notice. *Id.* at *7–8. As was explained in Defendants' last correspondence, ECF No. 46, Plaintiff's counsel's messages are misleading and inconsistent with the Court-approved notice and should be precluded. Furthermore, the circumstances here show there cannot be a legitimate "investigation" of Plaintiff's claims. Assuming Ms. Sarr truly rejected the offer of judgment, Plaintiff's counsel was merely days away from receiving the Collective Action List. People who opt-in to this Action and retain Plaintiff's counsel would presumably share necessary information with him, dispensing with the need for an "investigation."

**III.     Request to Limit Contact with Potential Opt-Ins**

Based on the foregoing, Defendants renew their request that the Court limit Plaintiff's counsel's contact with Sinergia's employees except as authorized for purposes of disseminating the FLSA collective action notice. Additionally, in the absence of key facts in Ms. Sarr's declarations, counsel's ongoing contact with Sinergia's employees, and Plaintiff's continued unavailability for a deposition before the deadline for Defendants to produce the Collective Action List, Defendants respectfully request that the Court:

(a) compel Plaintiff's deposition to take place before the end of 2022, with the Collective Action List to be produced two (2) business days after the deposition; or
(b) stay the FLSA collective action, including production of the Collective Action List, pending an in-person evidentiary hearing with Plaintiff and all counsel in attendance before the Court to address the Rule 68 offer of judgment and Plaintiff's counsel's contact with Sinergia's former and current employees.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

/s/ *Gianfranco J. Cuadra*

Gianfranco J. Cuadra

cc:  Plaintiff's attorneys (via ECF)