UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ADAM SARR,

Plaintiff, New York, N.Y.

v. 22 Civ. 3610 (VEC)

SINERGIA, INC., *et al*.,

Defendants.

------------------------------x Hearing

January 23, 2023
2:30 p.m.

Before:

HON. VALERIE E. CAPRONI,

District Judge

APPEARANCES

LEE LITIGATION GROUP, PLLC
Attorneys for Plaintiff
BY: C.K. LEE

PECHMAN LAW GROUP, PLLC
Attorneys for Defendants
BY: GIANFRANCO J. CUADRA

(Case called)

THE DEPUTY CLERK: Counsel, please state your appearance for the record.

MR. LEE: Good afternoon, your Honor. It's C.K. Lee for the plaintiff, and I'm with my client, Ms. Adam Sarr.

THE COURT: Good afternoon, Mr. Lee; good afternoon, Ms. Sarr. Please be seated.

MR. CUADRA: Good afternoon, your Honor. This is Gianfranco Cuadra, of Pechman Law Group, PLLC, for the defendants.

THE COURT: Good afternoon Mr. Cuadra.

MR. CUADRA: Good afternoon, your Honor.

THE COURT: Okay. There are several items on the agenda, but I think the first item, which is why I required Ms. Sarr to be here, deals with the offer of judgment.

So Mr. Cuadra, do you want to question Ms. Sarr?

MR. CUADRA: I can, your Honor, but if the Court prefers to do so.

THE COURT: No, I'm happy to have you do your job.

Ms. Sarr do you want to come up to the witness stand.

ADAM SARR,

having been duly sworn, testified as follows:

THE COURT: Go ahead, Mr. Cuadra.

DIRECT EXAMINATION

BY MR. CUADRA:

Q. Good afternoon, Ms. Sarr.
A. Good afternoon.
Q. When was the first time that you ever -- are you aware that the defendants made an offer of judgment to you in this case?
A. I am.
Q. Are you aware -- how many offers of judgment did the defendants make to you?
A. Two.
Q. When was the first time that you ever heard of the first offer of judgment?
A. It was shortly after I brang this entire case in front of Lee Litigation. I can't necessarily give you the date as I don't remember it, but I'm sure that Mr. Lee has it documented.
THE COURT: Can you pull the forward the microphone, so it is more in front of you.
THE WITNESS: Here?
THE COURT: It's better. And if you could slow down. You are talking very fast.
THE WITNESS: Sorry. Should I repeat what I was saying?
MR. CUADRA: I didn't hear the last part of it, actually. Can I please have it again?
A. I believe that I said that everything was brought to the attention of C.K. Lee and Lee Litigation in general, and it

was -- I don't have the necessary -- the exact date, but I believe that they have the information with them.

THE COURT: Your recollection is that it was shortly after the lawsuit was filed?

THE WITNESS: Yes.

BY MR. CUADRA:

Q. When did you first hear of the second offer of judgment to you?

A. Late November.

Q. Do you recall when exactly or not?

A. I believe it was November 22 that was documented.

Q. Who was it at the Lee Litigation Group that reached out to you about the offer of judgment? Just to clarify, the second offer of judgment.

A. I believe it was C.K. Lee.

Q. That was on the phone or that was in person?

A. No, that was over the phone.

Q. Do you recall if it was at night or in the morning?

A. It had to be definitely sometime in -- during the day.

Q. What do you know about the offer of judgment, in other words, what was offered to you?

A. I believe they offered $43,000.

Q. Anything else?

A. I believe that's all.

Q. Did you ever read the offer of judgment?

A. I did.
Q. Was that the same day?
THE COURT: When did you read it?
THE WITNESS: It was the same day that it was phone called to me that they have given an offer, Sinergia had given an offer.
THE COURT: Okay.
BY MR. CUADRA:
Q. So the offer of judgment was forwarded to you by e-mail?
A. I believe so, yes.
Q. And do you recall what the other terms of the offer of judgment were?
A. The first one, meaning?
Q. The second offer of judgment.
A. What was entailed?
Q. Right.
A. Not that I can remember and speak to you now; but, again, I believe everything was documented and it should be with Lee Litigation.
Q. Do you recall if the 43,000 that you mentioned was to you or was it to you and to your attorney?
A. I believe it's to me and my attorneys.
Q. Are you aware right now that the 43,000 was an offer just to you?
A. Well, it's good to clarify to refresh my memory.

MR. CUADRA: Can I show the witness the offer of judgment, please?

THE COURT: Of course.

BY MR. CUADRA:

Q. Ms. Sarr, I'm handing to you the defendant's offer of judgment dated November 22, 2022. When you are finished reviewing the offer of judgment, please let us know.

A. Sure.

(Pause)

A. Okay. It's pretty clear to me now. Thank you for refreshing my memory.

Q. Was that the offer -- the same offer of judgment that you received from your attorneys?

A. I believe so.

Q. Now that you have read the offer of judgment, you understand that the $43,100.86 the defendants were offering was just to you?

A. Yes, and then separately you guys would be compensating me for the attorneys.

Q. The offer of judgment --

A. It says here.

Q. Just to clarify, the offer of judgment states that your counsel would be paid separately --

A. Right.

Q. -- by the defendants either in an amount that's agreed to

between the parties or, if the parties cannot agree, the Court would set the attorney's fees.

A. I understand now.

Q. Okay. Did you understand that back then when you first got the offer of judgment?

A. Again, I read it, but you are again refreshing my memory now.

THE COURT: That's not quite the question. The question is at the time that the second offer was made, did you --

THE WITNESS: You are asking me to recall.

THE COURT: I'm sorry?

THE WITNESS: You are asking me to recall.

THE COURT: Yes. Do you recall whether at that time you understood that the offer was 43,000 and change for you, and Mr. Lee would be compensated separately from that?

THE WITNESS: I believe I am being recalled now.

THE COURT: You recall that now.

THE WITNESS: Yeah.

THE COURT: Okay.

THE WITNESS: It's much clearer. Thank you.

BY MR. CUADRA:

Q. Ms. Sarr, going back, let's back up a second. In this case, you first started this case back in 2021. Do you recall?

A. I do.

Q. Do you recall that at some point later on in the case there was an amended complaint, meaning what you were saying in this case was amended and there was a new submission to the Court?

A. Would you like to better explain what you mean?

Q. Do you understand that the first document that goes to Court on behalf of the plaintiff is a complaint?

A. Is a complaint.

MR. LEE: I'm going to object, your Honor. Is that part of the topic?

THE COURT: Yeah, I don't know. This seems somewhat far afield. Where are we going with this?

MR. CUADRA: Sure. I will just cut to the question.

BY MR. CUADRA:

Q. Ms. Sarr, how much do you think you are owed in this case if you won?

A. I mean, it's not necessarily a fact of compensation. It's the fact that I want liabilities to be reviewed by Sinergia and whoever controls, which I believe is Donald Lash, if I'm not mistaken. I want to make sure that no other employee is at such a vulnerable point in their life, where they come to a company seeking employment and also seeking to help those that they are employed to support and they are not compensated correctly and they are abused and other things that go along

the way of employment. It's not necessarily a figure. It's more so the action towards it.
Q. I will ask the question again. Do you know the money amount that you claim you are owed in this case?
THE COURT: Let me rephrase the question that he is asking you.
THE WITNESS: I believe I understand what he said as he said it in the second sentence.
THE COURT: Okay.
THE WITNESS: Again, I did not say that I have something in mind in figures. I believe that I wanted something that was more towards action.
THE COURT: No, I understand that. What he is asking you is if you litigate the case and if you win, what is the maximum amount of dollars that you can win? What were you asking for?
THE WITNESS: I mean, I know that when they gave the first offer, that's when that was brought to my attention about money but, again, I don't have any figure in mind, if that's okay with you guys.
BY MR. CUADRA:
Q. So you are not aware that your attorney said -- calculated damages for you and said that you are owed a maximum amount, based on what you say, of $43,000?
A. I believe that me and my lawyer did go over the figures,

and compensation was about 50-something thousand, if that's what you are asking.

THE COURT: That is what he is asking.

THE WITNESS: Then that's what it is.

BY MR. CUADRA:

Q. And you are aware that that compensation, that amount that you just said, that's based only on what you say, not taking into account any other records from Sinergia?

A. Repeat that.

Q. The amount that you are saying is based on what you said, meaning based on your allegations, not considering any of the records that the company has produced.

MR. LEE: I'm going to object to that. I mean, he is assuming that.

THE COURT: Overruled.

Do you understand the question?

THE WITNESS: No, not necessarily.

THE COURT: Try again.

BY MR. CUADRA:

Q. You just said you think you are owed about $50,000, yes?

A. Yes.

Q. The way that those -- that number, that amount was calculated, you understand that it is based on what you claim happened in this case?

A. Of course.

Q. And it is not based -- in other words, it is a calculation that does not take into account whatever it is that the defendants -- that the company claims or whatever records that the company has produced.
A. Well, of course, which is why we are here.
Q. So, in other words, you understand that the number that you --
A. It's my -- it's under just my claim.
Q. It's your best possible case, yes?
A. I believe so, yes.
Q. Okay. Now that you understand the offer of judgment, for $43,100.86, now that you understand that's the amount that's being paid only to you and nobody else, is that something that you would have accepted or is that something you would have accepted back then?
MR. LEE: I'm sorry. I think she's -- I think the question is improper. He is asking her --
THE COURT: Overruled.
A. There are some realities that I have been told, and I understand that taking that offer would seem just basic for everyone to just move along. If that's the case, of course.
THE COURT: Of course what?
THE WITNESS: Of course I would be willing to take it.
THE COURT: So what I am interested in is what you

understood at the time, that is --

THE WITNESS: What I understood --

THE COURT: -- when you rejected it.

THE WITNESS: -- at the time is that, again, I have my own interests to pursue this case as a class and not just to settle for myself. Now that we have brought into this courtroom and I understand certain realities, I want to understand and I want the courtroom to understand better that if I was offered again, I would accept.

THE COURT: All right. So what I am trying to understand is what changed?

THE WITNESS: What changed is the awareness of certain realities of this entire case.

THE COURT: Like what?

THE WITNESS: Well --

MR. LEE: I'm sorry, your Honor. You know, there are certain, I guess, privileged conversations. I understand --

THE COURT: I don't want you to tell me what Mr. Lee has told you, except that I want to understand what you knew at the point in time where you declined the offer.

THE WITNESS: So --

THE COURT: So let me ask you some specific questions.

THE WITNESS: Okay.

THE COURT: Did you understand that the offer that

the company was making would go 100 percent to you and they would separately take care of the lawyers' fees that Mr. Lee was --

THE WITNESS: As I recall to me, I understand better now. That's what I read, yes.

THE COURT: Did you understand that at the time?

THE WITNESS: I believe I did.

THE COURT: Mr. Lee explained that to you.

THE WITNESS: I believe he did.

THE COURT: Okay. Did he also explain to you that there were consequences if you declined the offer and the case went forward and you were awarded at the end of the day less dollars than they had offered you?

THE WITNESS: Yes I, understood that.

THE COURT: What were the consequences to you?

THE WITNESS: So that's the part that I want you to refresh my memory.

THE COURT: No, I want you to tell me now what you understood those consequences to be.

THE WITNESS: I'm sorry, I can't recall.

THE COURT: Mr. Lee, you are next.

Thank you. You can step down.

THE WITNESS: Thank you.

THE COURT: I want Mr. Lee under oath.

THE WITNESS: Do you want me to take this with me or

leave it here?

THE COURT: You can take it back and give it to Mr. Cuadra.

(Witness excused)

MR. CUADRA: Would your Honor like to do the questioning for Mr. Lee.

THE COURT: I want to ask Mr. Lee a question.

MR. CUADRA: With the Court's permission I will sit down.

C.K. LEE,

having been duly sworn, testified as follows:

DIRECT EXAMINATION

BY THE COURT:

THE COURT: Mr. Lee, did you explain to your client the consequences of rejecting an offer of judgment if she were to recover less than the total amount of the offer of judgment?

THE WITNESS: Yes.

THE COURT: Did you do that in person or over the telephone?

THE WITNESS: Yes, I did it over the phone.

THE COURT: What did you tell her?

THE WITNESS: I said if you don't get the same amount if we were to go to trial, then the claimant would be responsible for the expenses that are incurred.

THE COURT: That is, she would be responsible for the expenses incurred.

THE WITNESS: That's right.

THE COURT: Did you explain that to her?

THE WITNESS: Yes.

THE COURT: That that was the downside of saying no.

THE WITNESS: Yes.

THE COURT: Did you explain to her that this was probably the maximum amount she could possibly recover on this claim?

THE WITNESS: No. I said it was probably around $50,000.

THE COURT: And did you explain to her that the difference between those two amounts, given your fees, if it was a settled case as opposed to a litigated case, might eat up that $7,000 difference?

THE WITNESS: Sure. But, your Honor, as -- you know, I have also -- I also explained other risks and benefits to the claim. I believe the conversation is privileged. And so I believe her testimony is clear that she was aware of the settlement and there are certain benefits, which I can inform the Court if the Court thinks it is necessary for me to breach the privilege of what I informed the client when I was trying to advise her on the settlement that was provided, but she has also informed the Court that she wanted to pursue the claim as

a class and it wasn't just about money.

THE COURT: Yeah, I understand that, but she now will take the money.

THE WITNESS: Well, there is a reason for that, and I can explain the reason, because we talked about it today, and I even informed the Court. But the reason is --

THE COURT: I don't want anything that is privileged.

THE WITNESS: Well, then I can't tell the Court why we changed our mind. But as is fairly obvious, the Court has been, I guess, unhappy about not accepting the offer and --

THE COURT: I'm indifferent about not accepting the offer, Mr. Lee. My concern is that, based on the representations of the defendant, the refusing to accept the offer, and particularly given the back-and-forth in terms of when the information was conveyed to your client, it led me to believe that you had not communicated to your client what the offer was, really communicated to her that it did not include your fees, and therefore that was a gross amount of money that she was going to receive, and that you didn't adequately explain the downside. And because I have seen this from your firm before, I was concerned.

So thank you. You can step down.

THE WITNESS: Thank you, your Honor.

(Witness excused)

THE COURT: All right. Mr. Cuadra, do you have any

other questions for Ms. Sarr?

MR. CUADRA: No, your Honor, I do not.

THE COURT: Okay. Mr. Lee wants me to order you to reinstate the offer. Is the defendant willing to reinstate the offer of judgment?

MR. CUADRA: The short answer is the defendant is willing to renew the offer of judgment if Ms. Sarr is willing to accept it today and this case is closed. However, as far as reinstating the offer of judgment, we did not submit a response to the last letter, your Honor, because the Court never required one. That's number one.

THE COURT: I thought it made more since just to stop the exchange of letters and have a conversation.

MR. CUADRA: Yes, your Honor. We appreciate that, because we don't want to spend more of our clients' money and time. But the response really is, there is no reason, there's no exceptional circumstance to toll the Rule 68 limitations period, because the offer was made all the way back on November 23, and if Ms. Sarr --

THE COURT: Well, let me just make sure I understood. Your position is you are willing to reopen the offer if Ms. Sarr is prepared to accept it today.

Mr. Lee, what's your answer?

MR. LEE: Yes, we will accept it, your Honor.

THE COURT: Fine. The offer of judgment, please

submit the required paperwork. This lawsuit is effectively dismissed.

Mr. Lee, you are going to get crosswise with a bar committee, and it's not going to take that much longer for that to happen. You have got to stop this. You have you ended up dragging your client in here because didn't you do what you should have done, and that's really not acceptable.

So anything further from the plaintiff?

MR. LEE: No, your Honor.

THE COURT: Ms. Sarr, you should actually -- there is going to be some paperwork that's going to need to be completed, but you should have your money in what? How long?

MR. CUADRA: The offer is within ten business days of the Court closing the case and the notice of acceptance being filed, your Honor.

THE COURT: Okay. So what has to happen first?

MR. CUADRA: They simply have to submit to the Court on ECF and an accepted notice -- notice of acceptance of offer of judgment.

THE COURT: We have got it on the record. Do we need something further?

MR. CUADRA: Oh, no. If that's the case, no, your Honor. But just to have a clear record, we can just file the offer of judgment with the proposed judgment so that the Court can so order it.

THE COURT: Perfect. I will go based on the oral representation here that it is accepted. If you submit it today, I will sign it today, and we will be done with it. You will have your money in two weeks. Okay? Understood?

MS. SARR: Yes, your Honor.

THE COURT: Try to work out your attorney's fees. If you can't work them out, I will take a look at a submission. Thank you all.

MR. LEE: Thank you, your Honor.

MR. CUADRA: Thank you, your Honor.

oOo

INDEX OF EXAMINATION

Examination of: Page

ADAM SARR

Direct By Mr. Cuadra . . . . . . . . . . . . . . . 2

C.K. LEE

Direct By The Court . . . . . . . . . . . . . . .14